1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

NELSON ORELLANA,

          Petitioner,

    v.

UNITED STATES OF AMERICA,

          Respondent.

Case Nos. 13-CV-00698-LHK
       09-CR-00096-LHK

**ORDER DENYING PETITION FOR
HABEAS CORPUS, AND DIRECTING
RESPONDENT TO ANSWER**

18

19

20

21

22

23

24

25

26

27

28

      Before the Court is Petitioner Nelson Orellana's ("Petitioner") petition for habeas corpus

pursuant to 28 U.S.C. § 2255 ("Petition"). ECF No. 1. Petitioner is currently serving a 68-month

sentence following his conviction for conspiracy to possess with intent to distribute cocaine, and

possession with intent to distribute cocaine. Petitioner, acting *pro se*, argues in the Petition that he

received ineffective assistance of counsel during a five-day bench trial before this Court, and as a

result Petitioner requests that the Court vacate the judgment against him. Petition at 1. Petitioner

also moves in his Petition for a new trial based on newly discovered evidence pursuant to Federal

Rule of Criminal Procedure 33. *Id.* at 2, 5. The United States ("Respondent") has filed an

opposition to the Petition. ECF No. 329[1] ("Opp'n"). Separately, Petitioner has filed a motion under 18 U.S.C. § 3582(c)(2) for modification of Petitioner's sentence. *See* ECF No. 328 ("Mot. Modify"). Having considered the submission of the parties, the record in this case, and the relevant law, the Court hereby DENIES the Petition, and ORDERS Respondent to answer Petitioner's motion for modification of sentence, for the reasons stated below.

## I.      BACKGROUND

### A.  Factual Background

On November 28, 2008, Petitioner met a confidential DEA informant ("CI") in the parking lot of a local Wal-Mart. Opp'n, Ex. 4, at 24. Petitioner and the CI were acquaintances who had previously worked for the same construction company. *Id*. at 95; *id.* Ex. 5, at 297. The CI saw Petitioner leaving Wal-Mart with several televisions and asked where Petitioner had gotten the money to make the purchase. *Id*. Ex. 5, at 301. Petitioner responded that he received money from selling cocaine. *Id.* at 301-02. The CI then told Petitioner that the CI wanted to purchase cocaine. *Id*. Ex. 4 at 24. Petitioner invited the CI to Petitioner's residence, and once there Petitioner took the CI to a shed behind the house. *Id*. Petitioner then showed the CI approximately two to four ounces of cocaine which appeared to be packaged for distribution. *Id.* When the CI asked if Petitioner could obtain five kilograms of cocaine, Petitioner responded in the affirmative, and stated that Petitioner had obtained that amount of cocaine before. *Id*. Ex. 5, at 310.

During a subsequent conversation, the CI and Petitioner discussed the price of cocaine. *Id*. at 318-19. Petitioner stated that the cocaine would cost $22,000 per kilogram, of which Petitioner would receive a cut of $2,000 for each kilogram sold. *Id*. at 319.

On December 8, 2008, the CI went to meet with Petitioner's source of cocaine in San Pablo, California. *Id*. Ex. 4, at 30; *id*. Ex. 5, at 321-22. Before driving to San Pablo, the CI first drove to Petitioner's house, where Petitioner reaffirmed the price of the cocaine and suggested to the CI that the deal might facilitate a continuing relationship between Petitioner, the Petitioner's

---

[1] Unless otherwise indicated, all subsequent docket references are to 09-CR-00096-LHK.

Case Nos. 13-CV-00698-LHK and 09-CR-00096-LHK
ORDER DENYING PETITION FOR HABEAS CORPUS, AND DIRECTING RESPONDENT TO ANSWER

source of the cocaine, and the CI. *Id*. Ex. 5, at 324-29. The CI then followed the Petitioner to a meeting with the source. *Id*. at 331. On that day, between 11:49 a.m. and 6:06 p.m., Petitioner, Petitioner's source, and the CI placed 72 calls to one another. *Id*. Ex. 6, at 660-64. Petitioner initiated 35 of those calls. *Id*.

Petitioner, Petitioner's source, and the CI arranged to consummate the cocaine transaction on December 10, 2008, in the parking lot of a local Lowe's. *Id*. Ex. 4, at 39-40. Petitioner made multiple phone calls to the CI and to Petitioner's source to facilitate the transaction. *Id*. at 40. However, Petitioner's source failed to arrive at the Lowe's on time, and the CI told Petitioner that the CI wanted to call off the deal. *Id*. Ex. 5, at 344. Petitioner tried to persuade the CI to wait. *Id*. at 345. Ultimately, the deal did not happen on December 10, 2008. *Id*. Ex. 4, at 40.

A few days after the failed transaction on December 10, 2008, Petitioner called the CI and said that Petitioner had another, more reliable source who could supply Petitioner with cocaine. *Id*. at 41. In early January, Petitioner and the CI began discussing another transaction. *Id*. at 45. Petitioner and the CI met Petitioner's new source at a job site in Sunnyvale, California on January 10, 2009. *Id*. Ex. 4, at 153-54. During the conversation about a possible transaction, Petitioner stated he would relay the time and location of any transaction from the CI to the Petitioner's source. *Id*. at 153-55. Petitioner subsequently called the source of cocaine to arrange for the CI to purchase three to four kilograms of cocaine at a local Lowe's parking lot on January 13, 2009. *Id*. at 157.

On January 13, 2009, surveillance officers tailed Petitioner as he drove from Petitioner's residence to the Lowe's parking lot where the drug transaction would occur. *Id*. at 187-90. Shortly thereafter, the CI arrived and parked near Petitioner's vehicle. *Id*. at 204. After 45 minutes passed, and Petitioner's source had not yet arrived with the cocaine, the CI stated that the CI was going to leave. *Id*. Ex. 5 at 356. Petitioner urged the CI to stay. *Id*. Petitioner proceeded to wait with the CI in the parking lot for two hours. *Id*. at 360. Petitioner's source then arrived, and once the CI confirmed that cocaine was present, Petitioner, Petitioner's source, and three other individuals who had accompanied Petitioner's source, were taken into custody. *Id*. at 115-16. DEA agents

Case Nos. 13-CV-00698-LHK and 09-CR-00096-LHK
ORDER DENYING PETITION FOR HABEAS CORPUS, AND DIRECTING RESPONDENT TO ANSWER

United States District Court
Northern District of California

1  recovered approximately one kilogram of a substance containing cocaine from one of the vehicles

2  at the scene. *Id*. at 117-21; *id.* Ex. 15.

3  **B. Procedural History**

4  Petitioner was subsequently indicted and charged with conspiracy to possess with intent to

5  distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(ii), and

6  possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and

7  841(b)(1)(B)(ii). ECF No. 189. At a March 9, 2012 status conference, Petitioner waived his right

8  to a jury trial and elected to proceed with a bench trial. Before Petitioner waived his right to a jury

9  trial, Petitioner's attorney James Vaughns ("Mr. Vaughns") informed the Court, "I don't think he

10  [Petitioner] wants a jury trial. . . . I think he understands, I think, the benefits I've explained to him

11  of a court trial versus a jury trial." ECF No. 301, at 3. The Court then conducted a colloquy with

12  Petitioner through an interpreter which began:

> THE COURT: Do you want to have a trial by a jury, or do you want to have a trial
> just by me, the judge?
>
> THE DEFENDANT: I'm going to do it with you.
>
> THE COURT: All right. Do you have any hesitation about waiving your right to a
> jury trial?
>
> THE DEFENDANT: Could you repeat that, please?
>
> THE COURT: Do you have any hesitation in giving up your right to have a trial by
> a jury?
>
> THE DEFENDANT: No, no. I'm not concerned.

22  *Id.* at 3-4. The colloquy also contained the following exchange:

> THE COURT: Okay. Have you had enough time to discuss the benefits and
> disadvantages of going by way of a bench trial versus a jury trial with your
> attorney, Mr. Vaughns?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Has Mr. Vaughns been able to answer all your questions about
> whether you should have a jury trial versus a bench trial?

4

THE DEFENDANT: Yes, he answered everything.

THE COURT: Okay. Has anyone made any promises or made any threats against you in order to get you to waive your right to a trial by a jury?

THE DEFENDANT: No, no.

THE COURT: Okay. Have you taken any medication or any drugs that affect your ability to think clearly, understand what is happening, and make decisions?

THE DEFENDANT: Yes. Well, yes. Sometimes I take stuff for my headache. I suffer from headaches. . . .

THE COURT: And so is that affecting your ability today to think clearly and understand what is happening?

THE DEFENDANT: Oh, no, no. No, that's not it. . . .

THE COURT: Okay. Are you thinking clearly today?

THE DEFENDANT: Yes. All the time I've been thinking clearly.

THE COURT: Okay. You understand what's happening today?

THE DEFENDANT: Yes, of course.

THE COURT: All right. And you're of clear mind to make a decision today?

THE DEFENDANT: Yes, that's fine.

THE COURT: All right. Mr. Orellana, was this stipulation and court approval for a waiver of jury trial form translated into Spanish for you with the assistance of a Spanish interpreter?

THE DEFENDANT: Yes.

THE COURT: Do you understand this stipulation for waiver of jury trial?

THE DEFENDANT: Yes, yes, I do understand.

THE COURT: All right. Have you had enough time to discuss this stipulation for waiver of trial form with your attorney, Mr. Vaughns?

THE DEFENDANT: Yes, he gave me time to talk about it.

THE COURT: All right. And was Mr. Vaughns able to answer all of your questions

United States District Court
Northern District of California

about this stipulation and court approval for waiver of jury trial form?

THE DEFENDANT: Yes.

THE COURT: All right. Are you satisfied with the services of your attorney, Mr. Vaughns, in advising you regarding this stipulation and court approval for waiver of jury trial form?

THE DEFENDANT: Yes, yes.

*Id.* at 4-8. The Court also confirmed that Petitioner understood he had a right to a jury trial:

THE COURT: Okay. Mr. Orellana, you do understand that you have the right to be tried by 12 jurors? Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: Do you give up that right to be tried by a jury?

THE DEFENDANT: Yes.

*Id.* at 4-8. Subsequently, after Petitioner, Mr. Vaughns, Respondent, the Court, and the interpreter

signed the waiver of jury trial form, the Court had the following exchange with Petitioner:

THE COURT: Okay. All right. Then I've signed this form, which means, Mr. Orellana, that I will try your case, or I'll be the decision maker in your case and not a jury of 12 citizens. Do you understand that, sir?

THE DEFENDANT: Yes, I understand.

*Id.* at 4.

Petitioner was then tried in a five-day bench trial. ECF Nos. 247, 248, 249, 250 & 251.

During trial, Respondent called multiple witness, including DEA agents, two of Petitioner's co-

defendants, and the CI. *See* Opp'n at 3. Respondent also introduced recordings of phone calls and

meetings between Petitioner and the CI, and records of phone calls. *Id.* at 4. Petitioner testified as

the only witness on Petitioner's behalf. *Id.* At trial, Petitioner testified that the CI pressured

Petitioner to participate in the drug transaction of January 13, 2009, and that Petitioner felt he had

"no way out." Opp'n Ex. 6, at 479-82, 496-98; *see also id.* at 528 (Petitioner testifying that the CI

pushed Petitioner to participate in the drug transaction and "[i]t came to a point where my mind

shut down and, well, everything he [the CI] told me I would do."). Petitioner also testified that he

Case Nos. 13-CV-00698-LHK and 09-CR-00096-LHK
ORDER DENYING PETITION FOR HABEAS CORPUS, AND DIRECTING RESPONDENT TO ANSWER

1    did not know at the time of the drug transaction that selling drugs was illegal, and Petitioner

2    further stated that he did not participate in the transaction for money. *Id.* at 496, 507.

3         On March 20, 2012, the Court found Petitioner guilty on both counts charged. *Id.* Ex. 8. In

4    advance of Petitioner's sentencing hearing, the U.S. Probation Department submitted a Pre-

5    Sentence Report ("PSR"). The PSR concluded that, because the amount of cocaine recovered from

6    the January 13, 2009 transaction was 993.8 grams, Petitioner's base offense level was 26, which is

7    the base offense level for more than 500 grams but not more than two kilograms of cocaine. PSR

8    ¶ 33. The PSR added a two-level adjustment for obstruction of justice, based on Petitioner's trial

9    testimony. *Id.* ¶ 37. This resulted in a total offense level of 28. *Id.* ¶ 42. With no criminal

10   convictions, Petitioner was in Criminal History Category I. *Id.* ¶ 46. Based on a total offense level

11   of 28, and a Criminal History Category I, the advisory Guidelines range was 78 to 97 months'

12   imprisonment. *Id.* ¶ 66. The PSR also stated that Petitioner's convictions carried a 60-month

13   minimum sentence. *Id.* ¶ 65.

14        With respect to the recommended two-level adjustment for obstruction of justice, the PSR

15   stated that Petitioner's testimony during his trial in support of an entrapment defense "clearly

16   supports a 2-level increase for Obstruction of Justice, pursuant to U.S.S.G. § 3C1.1." *Id.* ¶ 28.

17   Specifically, the PSR noted that Petitioner testified implausibly that: (1) he did not know drug

18   trafficking was illegal; (2) the CI pressured Petitioner to sell drugs and that Petitioner's mind "shut

19   down" under the CI's influence; and (3) Petitioner did not engage in the January 13, 2009

20   transaction for money. *Id.* The PSR further stated that based on Petitioner's testimony, Petitioner

21   "has failed to accept responsibility for his criminal conduct by denying his involvement in the

22   instant offense and by providing false testimony during his trial." *Id.* ¶ 29.

23        On December 5, 2012, one week prior to Petitioner's sentencing, Respondent submitted a

24   sentencing memorandum recommending that the Court sentence Petitioner to 78 months

25   imprisonment. ECF No. 278, at 2. Respondent's recommendation was based on Petitioner's failure

26   to accept responsibility for his crime, and the contention that Petitioner's false testimony at trial

27   supported a two-level increase for obstruction of justice. *Id.* at 4. Petitioner, in his own sentencing

28

Case Nos. 13-CV-00698-LHK and 09-CR-00096-LHK
ORDER DENYING PETITION FOR HABEAS CORPUS, AND DIRECTING RESPONDENT TO ANSWER

*United States District Court*
*Northern District of California*

1     memorandum, requested the mandatory minimum sentence of 60 months. ECF No. 277, at 5.

2         On December 12, 2012, the Court held a sentencing hearing at which the Court stated that

3     the Court did not believe Petitioner's convictions justified a sentence of 78 months because

4     Petitioner was "not an experienced drug dealer" and "in fact . . . seemed quite naïve and quite

5     unsophisticated in how he went about this offense." ECF No. 307, at 3. The Court also found that

6     Petitioner had no criminal history; that Petitioner had a long verified work history as a

7     construction worker; that Petitioner suffered from an injury in 2007 that placed him under

8     financial pressure; that Petitioner was supposed to obtain four kilograms of cocaine but only

9     obtained one; and that Petitioner had to support four young children, some of whom had medical

10    needs. *Id.* a 3-4, 10. However, the Court also found that a sentencing enhancement was appropriate

11    because Petitioner "did obstruct justice by testifying untruthfully during his trial on a number of

12    issues." *Id.* at 9. Specifically, the Court found that Petitioner's claimed ignorance that drug

13    trafficking was illegal; Petitioner's claim that "his mind just shut down under the influence of the

14    [CI]"; and Petitioner's claim that "he did not engage in these drug transactions for money when

15    the tapes clearly said he was hoping to get paid $2,000 per kilo," all supported an obstruction of

16    justice enhancement. *Id.* The Court also found that the evidence during trial showed that Petitioner

17    was the "glue that brought these various individuals . . . together to these drug transactions." *Id.* at

18    8. Moreover, after Petitioner stated at the hearing that he got "involved here in the United States

19    with something that other people got me involved in," the Court found it troubling that Petitioner

20    was "saying he got pulled into this. That does not sound consistent with acceptance of

21    responsibility." *Id.* at 7-8. The Court ultimately sentenced Petitioner to 68 months, eight months

22    above the mandatory minimum of 60 months. *Id.*

23        On December 26, 2012, Petitioner timely appealed his conviction and sentence to the

24    Ninth Circuit Court of Appeals. ECF. No. 283. On June 27, 2014, the Ninth Circuit affirmed

25    Petitioner's conviction and sentence. ECF No. 320.

26        On January 4, 2013, Petitioner filed the instant Petition. On August 15, 2014, the Court

27    issued an Order to Show Cause setting a briefing schedule regarding the Petition. No. 13-CV-

28

8

Case Nos. 13-CV-00698-LHK and 09-CR-00096-LHK
ORDER DENYING PETITION FOR HABEAS CORPUS, AND DIRECTING RESPONDENT TO ANSWER

1    00698, ECF No. 2. On December 1, 2014, the Court vacated and reset the briefing schedule at the

2    request of Respondent. No. 13-CV-00698, ECF No. 4. Respondent filed its Opposition to the

3    Petition on January 15, 2015, as well as seventeen supporting exhibits. *See* Opp'n. Petitioner did

4    not file a reply.

5          Separately, Respondent filed a motion under 18 U.S.C. § 3582(c)(2) for modification of

6    sentence on December 22, 2014. *See* Mot. Modify. Respondent has not yet filed a response to this

7    motion.

8    **II.    LEGAL STANDARD**

9          A Section 2255 motion to set aside, correct or vacate a sentence of a person in federal

10   custody entitles a prisoner to relief "[i]f the court finds that . . . there has been such a denial or

11   infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to

12   collateral attack." 28 U.S.C. § 2255(b). Under Section 2255, "a district court must grant a hearing

13   to determine the validity of a petition brought under that section, [u]nless the motions and files and

14   records of the case conclusively show that the prisoner is entitled to no relief." *United States v.*

15   *Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration in original) (emphasis omitted). A court

16   need not hold an evidentiary hearing where the prisoner's allegations, when viewed against the

17   record, either do not state a claim for relief or are so palpably incredible as to warrant summary

18   dismissal. *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *United States v.*

19   *Howard*, 381 F.3d 873, 877 (9th Cir. 2004). Accordingly, an evidentiary hearing is required only

20   if: (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2) the

21   petition, files, and record of the case cannot conclusively show that the petitioner is entitled to no

22   relief. *Howard*, 381 F.3d at 877.

23   **III.   DISCUSSION**

24          In his Petition, Petitioner raises two claims: ineffective assistance of counsel, and a motion

25   for new trial. As to the first claim, Petitioner asserts five grounds for claiming ineffective

26   assistance of counsel. First, Petitioner argues that his counsel, Mr. Vaughns, failed to meet with

27   Petitioner to discuss Petitioner's appeal until December 24, 2012, and that Mr. Vaughns "did not

28

Case Nos. 13-CV-00698-LHK and 09-CR-00096-LHK
ORDER DENYING PETITION FOR HABEAS CORPUS, AND DIRECTING RESPONDENT TO ANSWER

United States District Court
Northern District of California

United States District Court
Northern District of California

1   file the appeal as promised." Petition at 3-4. Second, Petitioner contends that Mr. Vaughns "failed

2   to raise an entrapment defense" during the trial, even though Petitioner told Mr. Vaughns that

3   Petitioner was "forced, pressured and induced" into the cocaine distribution conspiracy. *Id*. at 3-4.

4   Third, Petitioner argues that Mr. Vaughns failed to object to the drug amount attributed to the

5   Petitioner. *Id*. at 4; *see also id.* at 3 (contending that the court "erred in the sentencing scheme to

6   the movant [sic] that did not have any drugs contributed to him."). Fourth, Petitioner contends that

7   Mr. Vaughns failed to argue a minimal or minor role for the Petitioner. *Id*. at 3. Fifth and finally,

8   Petitioner argues that Mr. Vaughns failed to provide advice on Petitioner's waiver of a jury trial

9   and decision to proceed with a bench trial. *Id.* at 5.

10      Separate from Petitioner's ineffective assistance of counsel claim, Petitioner also moves

11   for a new trial pursuant to Federal Rule of Criminal Procedure 33 based on newly discovered

12   evidence. Petition at 2, 5. The Court will first address Petitioner's ineffective assistance of counsel

13   claim, then Petitioner's motion for new trial.

14      **A.  Ineffective Assistance of Counsel**

15      A petitioner's claim of ineffective assistance of counsel is governed by the two-part test set

16   forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on an ineffective

17   assistance of counsel claim, a petitioner must show that: (1) counsel's representation fell below the

18   range of competence demanded of attorneys in criminal cases, and (2) there is a reasonable

19   probability that, but for counsel's errors, the result of the proceeding would have been different.

20   *Id.* The first prong of the *Strickland* test, deficient performance, requires a showing that counsel's

21   performance "fell below an objective standard of reasonableness." *Id.* at 688. A habeas petitioner

22   has the burden of showing through evidentiary support that a counsel's performance was deficient.

23   *Toomey v. Bunnell*, 898 F.2d 741, 743 (9th Cir. 1990). Counsel's performance must be judged "on

24   the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at

25   690. The test is "highly deferential" as there is a "strong presumption that counsel's conduct falls

26   within the wide range of reasonable professional assistance." *Id.* at 689. In particular, "strategic

27   choices made after thorough investigation of law and facts relevant to plausible options are

28

Case Nos. 13-CV-00698-LHK and 09-CR-00096-LHK
ORDER DENYING PETITION FOR HABEAS CORPUS, AND DIRECTING RESPONDENT TO ANSWER

1    virtually unchallengeable." *Id.* at 690. The second prong of the *Strickland* test, prejudice, requires

2    the petitioner to show a "reasonable probability that, but for counsel's unprofessional errors, the

3    result of the proceeding would have been different. A reasonable probability is a probability

4    sufficient to undermine confidence in the outcome." *Id.* at 694. Courts may address the prongs in

5    whichever order is most efficient, and need not address one if the other is lacking. *Id.* at 697.

6         With these standards in mind, the Court now turns to each of the five grounds for

7    Petitioner's ineffective assistance of counsel claim.

8         *1. Failure to file a notice of appeal*

9         As his first grounds for ineffective assistance of counsel, Petitioner claims that after the

10   Court advised Petitioner at his December 12, 2012 sentencing that Petitioner had 14 days in which

11   to file a notice of appeal, Petitioner "request[ed] for the attorney to file the appeal notice for him,"

12   but that Petitioner did not "see the attorney again until Christmas [E]ve." Petition at 3. Petitioner

13   also claims that Mr. Vaughns "did not file the appeal as promised." *Id.* at 4.

14        The Court finds that the first ground for ineffective assistance of counsel is without merit.

15   The record in this case shows that Petitioner's counsel, Mr. Vaughs, filed a timely notice of appeal

16   on December 26, 2012. ECF No. 283. The Ninth Circuit considered the merits of Petitioner's

17   appeal and affirmed Petitioner's conviction and sentence on June 27, 2014. ECF No. 320.

18   Accordingly, Petitioner's claim that Mr. Vaughns "did not file the appeal as promised" is

19   controverted by the record. Petition at 4. Petitioner also acknowledges that Petitioner met with Mr.

20   Vaughns before Petitioner's notice of appeal was due. *See* Petition at 3 (referencing a meeting

21   with Petitioner's counsel on December 24, 2012). To the extent that Petitioner attempts to argue

22   that the meeting with Mr. Vaughns on December 24, 2012 fell below an objective standard of

23   reasonableness, Petitioner provides no support for such a contention. *See Toomey*, 898 F.2d at 743

24   (burden on habeas petitioner to show through evidentiary proof that counsel's performance was

25   objectively deficient). For these reasons, the Court finds Petitioner's first ground for ineffective

26   assistance of counsel to be meritless, and accordingly Petitioner is not entitled to relief on this

27   ground.

28

United States District Court
Northern District of California

2.  *Failure to present an entrapment defense*

Petitioner next argues that his counsel was ineffective because of Mr. Vaughns' alleged "failure to present the entrapment defense." Petition at 2; *see also id.* at 1 (stating that "a[n] entrapment defense should have been raised by my counsel"). In his Petition, Petitioner further states that Petitioner "told his counsel that he was trapped . . . [m]eaning that he was forced, pressured and induced into introducing the government informant to his Boss." *Id.* at 3.

The Court finds that this argument for ineffective assistance of counsel is also without merit. In cases where a counsel's failure to pursue a defense constituted deficient performance, counsel generally overlooked the defense altogether, *see, e.g., Phillips v. Woodford*, 267 F.3d 966, 983 (9th Cir. 2001) (holding petitioner raised a colorable claim of ineffective assistance when his counsel failed to identify a viable alternative defense), or failed to reasonably investigate the defense, *see, e.g., Siedel v. Merkle*, 146 F.3d 750, 755-57 (9th Cir. 1998) (counsel's failure to investigate client's psychiatric history, despite evidence that client suffered from mental illness, was deficient performance). Here, in contrast, the record shows that Mr. Vaughns argued or otherwise sought to support an entrapment defense throughout his representation of Petitioner. For instance, before trial on December 15, 2011, Respondent filed a motion *in limine* to preclude Petitioner from raising an entrapment defense at trial, ECF No. 177, a motion which Mr. Vaughns opposed on December 20, 2011, ECF No. 183. The Court, in its January 24, 2012 pre-trial order, agreed with Petitioner and denied Respondent's motion *in limine* to preclude an entrapment defense. ECF No. 207, at 2. The Court also approved court instructions which contained the Ninth Circuit Model Criminal Jury Instructions regarding an entrapment defense. ECF No. 246, at 41-42.

Furthermore, the record shows that entrapment was a major theme of Petitioner's defense at trial. For instance, at the close of the Respondent's case in chief, Mr. Vaughns moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and specifically referred to "the burden on the government's part to disprove, so to speak, the entrapment issue, that there's no predisposition and that there was no inducement to commit this crime." Opp'n, Ex. 6, at 465; *see also id.* at 468 (Petitioner's counsel arguing that the CI is "making it up because he did entrap

United States District Court
Northern District of California

1    Mr. Orellana. It didn't happen the way he said.").

2          In addition, the record shows that Mr. Vaughns put on evidence of an entrapment defense

3    through the testimony of Petitioner. For instance, on direct examination Mr. Vaughns elicited

4    testimony from Petitioner that when Petitioner encountered the CI at Wal-Mart on November 28,

5    2008, it was the CI who brought up the topic of selling drugs, that the Petitioner responded that he

6    had "no experience" and didn't "know anybody involved in that," and that the CI subsequently

7    pressured Petitioner to participate in a drug transaction. *Id*. at 479-82. Petitioner subsequently

8    testified that he "didn't want to have anything to do with [drugs]" but that Petitioner felt he had

9    "no way out." *Id*. at 498. Petitioner further testified that Petitioner "wasn't doing [the transaction]

10   for the money." *Id*. at 507. Finally, Petitioner also stated on re-direct examination that the CI

11   pushed Petitioner to participate in the January 13, 2009 drug transaction and "[i]t came to a point

12   where my mind shut down and, well, everything he [the CI] told me I would do." *Id*. at 528.

13         Finally, Mr. Vaughns raised the entrapment defense during closing argument, stating that

14   Petitioner felt "increased pressure" and a "pattern of pressure, pressure, pressure." *Id*. at 634-35.

15   Mr. Vaughns further stated during closing argument that the government sought to "induce[]"

16   Petitioner into participating in a drug transaction, and that the government laid "a trap for [an]

17   unwary innocent person. That's what I submit happened to you in this case." *Id*. at 636-37.

18         In sum, the record demonstrates that Petitioner's counsel, Mr. Vaughns, did not overlook

19   or fail to investigate an entrapment defense. To the contrary, the record illustrates that Mr.

20   Vaughns presented entrapment as a major theme in Petitioner's defense before and during trial.

21   Accordingly, the Court finds that Petitioner's second ground for ineffective assistance of counsel

22   is without merit, and Petitioner is not entitled to relief on this ground.

23         *3.   Failure to object to and properly argue the drug amount attributed to Petitioner*

24         Petitioner next appears to contend that Mr. Vaughns was ineffective because Mr. Vaughns

25   "failed to object to the drug amount contributed to the movant." Petition at 4; *see also id*. (stating

26   that counsel "failed to show that the movant is not responsible for any drug amount."). Although

27   the Petition does not otherwise detail the basis for this claim, the record from Petitioner's trial

28
                                                    13

United States District Court
Northern District of California

1    shows that the parties stipulated that the cocaine seized from the Lowe's parking lot on January

2    13, 2009 constituted 993.8 grams of cocaine. Opp'n, Ex. 15.

3          The Court finds that this ground for ineffective assistance of counsel is without merit. As

4    previously discussed, in evaluating an ineffective assistance of counsel claim, courts are required

5    to accord a "high level of deference" to counsel's strategic decisions. *Fairbank v. Ayers*, 650 F.3d

6    1243, 1252 (9th Cir. 2011). Furthermore, there is a strong presumption that challenged actions of

7    an attorney were "sound trial strategy." *Strickland*, 466 U.S. at 689. In addition, "in some cases a

8    trial attorney may find it advantageous to his client's interests to concede certain elements of an

9    offense or his guilt of one of several charges." *United States v. Swanson*, 943 F.2d 1070, 1075-76

10   (9th Cir. 1991); *see also Martin v. Waddington*, 118 F. App'x 225, 226 (9th Cir. 2004)

11   (unpublished decision) ("Conceding guilt of promoting prostitution was strategic because the

12   charge was supported by overwhelming evidence, and the concession provided an avenue to gain

13   credibility with the jury to more effectively argue that the State had not met its burden on the two

14   more serious charges.").

15         Accordingly where, as here, a petitioner raises an ineffective assistance of counsel claim

16   based on counsel entering into a stipulation as to certain facts, courts treat such decisions as

17   "[s]trategic choices as to how to defend a case" which are "'virtually unchallengeable.'" *Allerdice*

18   *v. Ryan*, 395 F. App'x 449, 451 (9th Cir. 2010) (unpublished decision) (quoting *Strickland*, 466

19   U.S. at 690); *see also Ruiz-Marin v. United States*, No. CIV. 13-297 WBS, 2013 WL 6713302, at

20   *4 (D. Idaho Dec. 18, 2013) (counsel's decision to stipulate to the quantity of drugs recovered was

21   a "tactical choice that he made in order to focus the defense on the claim that petitioner was not

22   part of a conspiracy to distribute" narcotics). Furthermore, where a petitioner raises an ineffective

23   assistance of counsel claim predicated on his counsel entering into a stipulation with the

24   government, it is relevant whether petitioner's counsel "also obtained stipulations from the state

25   regarding defense exhibits, offered evidence, cross-examined witnesses, elicited favorable

26   testimony, and presented a coherent if ultimately unsuccessful defense in closing argument."

27   *Allerdice*, 395 F. App'x at 451. Such facts, if present, weigh against finding ineffective assistance

28

*United States District Court*
*Northern District of California*

14

1   of counsel. *Id.*

2          Here, although Petitioner's counsel Mr. Vaughns stipulated as to the amount of cocaine

3   seized from the January 13, 2009 transaction, the record discloses that Mr. Vaughns "offered

4   evidence, cross-examined witnesses, elicited favorable testimony, and presented a coherent if

5   ultimately unsuccessful defense in closing argument." *Id.* Accordingly, Mr. Vaughn's choice to

6   stipulate to the amount of drugs recovered does not show that Mr. Vaughn's performance was

7   objectively unreasonable. *See id.* (finding "[c]ounsel was not ineffective" when counsel entered

8   into stipulations with the government because the stipulations represented "[s]trategic choices"

9   and counsel otherwise diligently argued the petitioner's case); *see also Strickland*, 466 U.S. at 688

10  (ineffective assistance of counsel claim requires that counsel's conduct "fell below an objective

11  standard of reasonableness").

12         Furthermore, the record in this case shows that there was substantial evidence supporting

13  the allegation that the 993.8 grams of cocaine recovered from the January 13, 2009 transaction

14  was attributable to Petitioner. Specifically, evidence at trial demonstrated that Petitioner initiated

15  the January 13, 2009 transaction when Petitioner called the CI in December 2008 to tell the CI that

16  Petitioner had a reliable source who could supply the CI with cocaine. Opp'n, Ex. 4, at 40-42. The

17  evidence also showed that on January 10, 2009, Petitioner accompanied the CI to a meeting with

18  this source of cocaine at a job site in Sunnyvale, California. *Id.* at 153-54. During the January 10,

19  2009 meeting, Petitioner stated that he would relay the time and location of any transaction from

20  the CI to the Petitioner's source. *Id.* at 153-55. Petitioner then met the CI in the parking lot of a

21  local Lowe's on January 13, 2009, where Petitioner waited with the CI for two hours for the

22  transaction to be consummated. *Id.* Ex. 5, at 360. At one point, when the CI stated that the CI was

23  going to leave because the Petitioner's source failed to arrive in a timely fashion, Petitioner

24  persuaded the CI to stay. *Id.* at 356. Subsequently, Petitioner's source arrived at the parking lot

25  with approximately one kilogram of cocaine, and once the CI confirmed the presence of the drugs,

26  law enforcement seized the drugs and arrested Petitioner, Petitioner's source, and three other

27  individuals. *Id.* Ex. 4, at 115-21. A forensic chemist subsequently tested the seized drugs and

28

United States District Court
Northern District of California

15

1   found it to have a net weight of 993.8 grams of cocaine. *Id.* Ex. 15, at 1-2.

2          In the face of this evidence, Mr. Vaughns apparently made the strategic decision to

3   stipulate to the quantity of cocaine recovered from the January 13, 2009 transaction, and not to

4   challenge the amount of drugs attributable to Petitioner, in favor of focusing on an entrapment

5   defense. Such a strategic choice is "virtually unchallengeable." *Strickland*, 466 U.S. at 690.

6   Moreover, Petitioner has not met his burden to show that this decision was objectively

7   unreasonable, especially given the "high level of deference" this Court must accord the strategic

8   decisions of Petitioner's counsel. *Fairbank*, 650 F.3d at 1252. Furthermore, although Petitioner

9   may now disagree with Mr. Vaughn's strategic decision, "[a] tactical decision by counsel with

10  which the defendant disagrees cannot form the basis of a claim of ineffective assistance of

11  counsel." *Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984) (per curiam). For these reasons,

12  the Court finds Petitioner's ineffective assistance of counsel claim fails.

13         In the Petition, Petitioner separately contends that the Court erred in sentencing Petitioner

14  because the "court has never determined the amount of drugs contributed to the movant." Petition

15  at 3. However, at the conclusion of evidence, the Court made a finding in its verdict form that

16  Petitioner "conspired to possess with intent to distribute cocaine weighing at least 500 grams or

17  more," and that Petitioner "possessed with intent to distribute cocaine weighing at least 500 grams

18  or more" in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(ii). Opp'n Ex. 8, at 1-2.

19  Those statutes prohibit, *inter alia*, possession with intent to distribute, and conspiracy to possess

20  with intent to distribute, 500 grams or more of a substance containing cocaine. *See* 21 U.S.C.

21  841(a)(1) (prohibiting possession with intent to distribute a controlled substance); *id.*

22  § 841(b)(1)(B)(ii) (providing for the sentencing of anyone found to possess 500 grams or more of

23  a substance containing, *inter alia*, cocaine in violation of subsection (a)(1)); *id.* § 846 (providing

24  for the punishment of attempt or conspiracy). The Court repeated this finding at the December 12,

25  2012 sentencing hearing, where the Court applied the section of the sentencing guidelines that

26  governed possession of more than 500 grams but less than two kilograms of cocaine. *Id.* Ex. 11, at

27  8-9; *see also* U.S.S.G. § 2(D)1.1(c)(7) (providing for base offense level of 26 for possession of

28

Case Nos. 13-CV-00698-LHK and 09-CR-00096-LHK
ORDER DENYING PETITION FOR HABEAS CORPUS, AND DIRECTING RESPONDENT TO ANSWER

United States District Court
Northern District of California

1  "[a]t least 500 [grams] of but less than 2 [kilograms] of Cocaine"). Accordingly, Petitioner's

2  contention that the Court never determined the amount of drugs attributable to Petitioner is

3  contradicted by the record.

4  For the reasons stated above, the Court finds that Petitioner's third ground for ineffective

5  assistance of counsel is without merit and Petitioner is entitled to no relief on this ground.

6  *4. Failure to argue a minimal or minor participant adjustment*

7  Petitioner's fourth ground for ineffective assistance of counsel is Mr. Vaughn's alleged

8  failure to argue for a "four point reduction for the mitigating role as [Petitioner] was a minor

9  participant." Petition at 3. Petitioner appears to argue that Mr. Vaughns should have argued

10  Petitioner was entitled to a four-level decrease because Petitioner was a "minimal participant" in

11  the January 13, 2009 transaction, or a two-level decrease in offense level because Petitioner was a

12  "minor participant" in that transaction. *See* U.S.S.G. § 3B1.2(a) (a "minimal participant in any

13  criminal activity" may receive a decrease in offense level by four levels); *id.* § 3B1.2(b) (a "minor

14  participant in any criminal activity" may receive a decrease in offense level by two levels").

15  The Court finds that Petitioner's fourth ground for ineffective assistance of counsel lacks

16  merit for two reasons. First, the Ninth Circuit has stated that "a downward adjustment under

17  section 3B1.2" for minor or minimal participation "is to be used infrequently and only in

18  exceptional circumstances." *United States v. Davis*, 36 F.3d 1424, 1436 (9th Cir. 1994).

19  Furthermore, the Ninth Circuit has "recognized that possession of a substantial amount of

20  narcotics is grounds for refusing to grant a sentence reduction" under either § 3B1.2(a) as a

21  minimal participant, or § 3B1.2(b) as a minor participant. *United States v. Lui*, 941 F.2d 844, 849

22  (9th Cir. 1991) (possession of, *inter alia*, 497 grams of cocaine considered "substantial").

23  Accordingly, a petitioner who is convicted of possessing a "substantial amount" of narcotics does

24  not raise a meritorious ineffective assistance of counsel claim based on counsel's failure to argue

25  for a downward adjustment under § 3B1.2. *See United States v. Martin*, 124 F.3d 214 (9th Cir.

26  1997) (unpublished decision) (petitioner failed to raise an ineffective assistance of counsel claim

27  where petitioner was "found guilty of knowingly possessing 252 grams of cocaine base and

28

17

United States District Court
Northern District of California

1  conspiring to distribute the drug" and subsequently argued he was entitled to a reduction in

2  offense level as a minimal participant).

3          Here, based on the evidence presented at trial, the Court found Petitioner guilty of

4  conspiracy to possess with intent to distribute cocaine weighing at least 500 grams or more, and

5  possession with intent to distribute cocaine weighing at least 500 grams or more. ECF No. 255, at

6  1-2. Accordingly, because Petitioner was found guilty of possessing a substantial amount of

7  narcotics, the decision of Petitioner's counsel to not argue for a downward adjustment as a

8  minimal or minor participant was not objectively unreasonable. *See Liu*, 941 F.2d at 849

9  (possession of a "substantial amount of narcotics is grounds for refusing to grant a sentence

10  reduction" pursuant to §§ 3B1.2(a) or 3B1.2(b)); *see also Martin*, 124 F.3d at 214 (affirming

11  denial of ineffective assistance of counsel claim based on failure to argue for a downward

12  adjustment pursuant to § 3B1.2(a) where the petitioner was found guilty of possessing 252 grams

13  of cocaine base).

14          Second, extensive evidence presented at trial illustrated that Petitioner was not a minimal

15  or minor participant in the crimes of which Petitioner was convicted. To the contrary, as the Court

16  found at Petitioner's sentencing, the evidence showed that Petitioner was the "glue" that brought

17  Petitioner, the CI, and four other individuals together at a local Lowe's parking lot on January 13,

18  2009 to consummate a transaction involving almost a kilogram of cocaine. ECF No. 307, at 8.

19  According to the evidence presented at trial, Petitioner originally arranged for the CI to purchase

20  five kilograms of cocaine on December 10, 2008. *See* Opp'n, Ex. 4, at 30. When that deal failed to

21  happen, the evidence showed that Petitioner contacted the CI to tell the CI that Petitioner had a

22  more reliable source who could supply the CI with cocaine. Opp'n, Ex. 4, at 40-42. On January

23  10, 2009, Petitioner accompanied the CI to a meeting with this more reliable source of cocaine at a

24  job site in Sunnyvale, California. *Id.* at 153-54. During the January 10, 2009 meeting, Petitioner

25  actively participated in the negotiations by stating, among other things, that Petitioner would relay

26  the time and location of any transaction from the CI to the Petitioner's source. *Id.* at 153-55.

27  Petitioner then met the CI in the parking lot of a local Lowe's on January 13, 2009, where

28

United States District Court
Northern District of California

Case Nos. 13-CV-00698-LHK and 09-CR-00096-LHK
ORDER DENYING PETITION FOR HABEAS CORPUS, AND DIRECTING RESPONDENT TO ANSWER

1    Petitioner waited with the CI for two hours for the transaction to be consummated. *Id.* Ex. 5, at

2    360. Furthermore, when the CI stated that he was going to leave because the Petitioner's source

3    had not arrived on time with the cocaine, Petitioner persuaded the CI to stay. *Id.* at 356.

4    Petitioner's source arrived thereafter with approximately one kilogram of cocaine, and once the CI

5    confirmed the presence of the drugs, law enforcement seized the drugs and arrested Petitioner,

6    Petitioner's source, and three other individuals. *Id.* Ex. 4, at 115-21. A forensic chemist

7    subsequently tested the seized drugs and found it to have a net weight of 993.8 grams of cocaine.

8    *Id.* Ex. 15, at 1-2.

9        Subsequently at trial, when Petitioner attempted to testify that he played a minor role in the

10   January 13, 2009 transaction—by, for instance, testifying that he was ignorant of certain details of

11   the transaction—the Court found Petitioner's testimony to be untruthful and adjusted Petitioner's

12   offense level at sentencing for committing obstruction of justice. ECF No. 307, at 9. Accordingly,

13   Mr. Vaughn's decision to forego any argument that Petitioner deserved a decrease in offense level

14   for being a minimal or minor participant was not objectively unreasonable. *See Strickland*, 466

15   U.S. at 688 (ineffective assistance of counsel claim requires that counsel's conduct "fell below an

16   objective standard of reasonableness.").

17       For the reasons stated above, the Court finds that Petitioner's fourth basis for his

18   ineffective assistance of counsel claim is without merit, and accordingly Petitioner is entitled to no

19   relief on this ground.

20       5.  *Waiver of right to jury trial*

21       Finally, Petitioner argues that his counsel was ineffective because Mr. Vaughns allegedly

22   told Petitioner that it would be "better for a bench trial." Petition at 3. Petitioner also states that

23   Petitioner did not know he had a constitutional right to a jury trial, and further contends that he

24   was prejudiced by not having the opportunity to have a jury trial. *Id.*

25       Again, the Court finds that this ground for Petitioner's ineffective assistance of counsel

26   claim is without merit. As a preliminary matter, the record in this case shows that it was Mr.

27   Vaughns, Petitioner's counsel, who first raised the prospect of waiving the right to a jury trial and

28

*United States District Court*
*Northern District of California*

19

Case Nos. 13-CV-00698-LHK and 09-CR-00096-LHK
ORDER DENYING PETITION FOR HABEAS CORPUS, AND DIRECTING RESPONDENT TO ANSWER

1    proceeding with a bench trial at a March 8, 2012 hearing prior to jury selection. ECF No. 300, at

2    10-11. Respondent initially did not consent to a bench trial, and instead requested time to consider

3    it. *Id.* Subsequently that same day, the parties filed a status report stating that Petitioner and

4    Respondent agreed to waive their right to a jury trial and proceed with a bench trial. ECF No. 223.

5    The parties then executed a stipulation waiving the right to a jury trial at a March 9, 2012 status

6    conference. ECF No. 301. Accordingly, one day elapsed between when Petitioner first raised the

7    prospect of waiving the right to a jury trial, and when Petitioner waived his right.

8         To the extent that Petitioner now argues that Mr. Vaughns did not fully inform Petitioner

9    of the right to a jury trial, or of the advantages and disadvantages of a bench trial versus a jury

10   trial, Petitioner's argument is contradicted by Petitioner's own statements at the March 9, 2012

11   status conference. At that conference, before Petitioner waived his right to a jury trial, the Court

12   conducted an extensive colloquy with Petitioner during which Petitioner affirmed that Petitioner

13   had "had enough time to discuss the benefits and disadvantages of going by way of a bench trial

14   versus a jury trial" with Mr. Vaughns. ECF No. 301, at 5. When the Court asked Petitioner if Mr.

15   Vaughns was "able to answer all your questions about whether you should have a jury trial versus

16   a bench trial," Petitioner responded, "Yes, [Mr. Vaughns] answered everything." *Id.* Petitioner

17   also affirmed that Petitioner had "had enough time to discuss this stipulation for waiver of trial

18   form with [Petitioner's] attorney," and that Petitioner's attorney was able to answer all of

19   Petitioner's questions about the stipulation. *Id.* at 7. When the Court asked Petitioner if Petitioner

20   was "satisfied with the services of your attorney, Mr. Vaughns, in advising you regarding this

21   stipulation and court approval for waiver of jury trial," Petitioner responded, "Yes, yes." *Id.* at 7-8.

22   In short, the record discloses that Petitioner did discuss the benefits and disadvantages of

23   proceeding with a bench trial versus a jury trial with Petitioner's attorney, that Petitioner's

24   attorney answered all of Petitioner's questions on the issue, and that Petitioner was satisfied with

25   the services of Mr. Vaughns. *See id.* at 5-8; *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977)

26   ("Solemn declarations in open court carry a strong presumption of verity."). Accordingly, the

27   Court finds Petitioner's current contention that Mr. Vaughns failed to advise Petitioner of the

28

20

benefits and disadvantages of a jury trial versus a bench trial to be without merit.

To the extent that Petitioner now argues that Petitioner was not aware of his right to a jury trial, and therefore did not validly waive this right, such an argument is also belied by the record. "A defendant may waive the constitutional right to a jury trial if the waiver is made voluntarily, knowingly, and intelligently." *Brown v. Burns*, 996 F.2d 219, 221 (9th Cir. 1993). A waiver of a right is valid if "[a]n examination of the record indicates that [the petitioner] was fully aware of the scope of the right he was waiving and did so as a strategic decision." *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995).

Here, Mr. Vaughns stated at the March 12, 2012 status conference that "I think [Petitioner] understands . . . the benefits I've explained to him of a court trial versus a jury trial." ECF No. 301, at 3. During the subsequent colloquy, the Court asked Petitioner if Petitioner wanted "to have a trial by a jury, or do you want to have a trial just by me, the judge?" *Id.* at 4. Petitioner responded, "I'm going to do it with you." *Id.* Subsequently, the Court asked Petitioner, "You do understand that you have the right to be tried by 12 jurors? Do you understand that, sir?" *Id.* at 8. Petitioner responded, "Yes." *Id.* The Court then asked if Petitioner was "giv[ing] up that right to be tried by a jury?" *Id.* Petitioner again responded, "Yes." *Id.* Later during the same colloquy, the Court told Petitioner, "I've signed this form, which means, Mr. Orellana, that I will try your case, or I'll be the decision[-]maker in your case and not a jury of 12 citizens. Do you understand that?" *Id.* Petitioner replied, "Yes, I understand." *Id.*

Petitioner further stated during the colloquy that Petitioner had no hesitation in giving up the right to have a trial by jury; that no one had made any promises or threats against Petitioner to induce him to waive the right to a jury trial; that Petitioner was not taking any medication or drugs that affected his ability to think clearly; and that Petitioner's waiver of jury trial form was translated into Spanish with the assistance of a Spanish interpreter. *Id.* at 4-7. Petitioner then executed a stipulation for waiver of jury trial, which stated that Petitioner "waives his right to a jury trial." ECF No. 252, at 1. The stipulation was signed by Respondent, Petitioner, Petitioner's counsel, the Court, and the interpreter who translated the stipulation into Spanish. *Id.* at 2. In sum,

Case Nos. 13-CV-00698-LHK and 09-CR-00096-LHK
ORDER DENYING PETITION FOR HABEAS CORPUS, AND DIRECTING RESPONDENT TO ANSWER

United States District Court
Northern District of California

1    the record demonstrates that Petitioner was aware of the right to a jury trial, and that Petitioner

2    waived this right "voluntarily, knowingly, and intelligently." *Burns*, 996 F.2d at 221.

3            For the reasons stated above, Petitioner's final ground for ineffective assistance of counsel

4    is without merit. Moreover, because the Court finds that all of the grounds for Petitioner's

5    ineffective assistance of counsel claim are without merit, Petitioner is entitled to no relief and the

6    Court is not required to hold an evidentiary hearing. *See Howard*, 381 F.3d at 877 (a court is only

7    required to hold an evidentiary hearing if, *inter alia*, the petition, files, and record of the case

8    cannot conclusively show that the petitioner is entitled to no relief).

9        **B.  Respondent's Rule 33 Motion for New Trial**

10           Separately from Petitioner's ineffective assistance of counsel claim, Petitioner also moves

11    in his Petition for a new trial pursuant to Federal Rule of Criminal Procedure 33 based on "newly

12    discovered evidence." Petition at 2; *see also id.* at 5 (moving for new trial because of "newly

13    discovered evidence by the movant"). However, Petitioner does not identify any "newly

14    discovered evidence," or state why it would support a motion for a new trial.[2] *See id.*

15           Federal Rule of Criminal Procedure 33 allows a court to "vacate any judgment and grant a

16    new trial if the interest of justice so requires." Fed. R. Crim. Proc. 33(a). The burden of justifying

17    a new trial rests with the defendant. *See United States v. Shaffer*, 789 F.2d 682, 687 (9th Cir.

18    1986). The decision to grant a new trial is within the sound discretion of the trial court. *See United*

19    *States v. Love*, 535 F.2d 1152, 1157 (9th Cir. 1976), *cert. denied,* 429 U.S. 847 (1976). Here,

20    Petitioner cites no newly discovered evidence, and accordingly Petitioner fails to carry his burden

21    to justify a new trial. *See Schaffer*, 789 F.2d at 687. Therefore, the Court finds that Petitioner is

22    entitled to no relief on his Rule 33 motion.

23

24    _____

       [2] Petitioner also appears to incorporate some of his ineffective assistance of counsel claims into
25    the Rule 33 motion for new trial. *See* Petition at 5 (moving for new trial under Rule 33 because
       Petitioner's counsel allegedly failed to inform Petitioner of his right to a jury trial, and failed to
26    raise an entrapment defense at trial). As previously discussed, the Court has found that Petitioner's
       ineffective assistance of counsel claims are baseless. *See* Section III.A, *supra*. Accordingly, to the
27    extent that Petitioner's Rule 33 motion is based on ineffective assistance of counsel, the motion
       lacks merit.
28                                                                                    22

United States District Court
Northern District of California

### C.   Motion for Modification of Sentence

On December 22, 2015, Petitioner filed a motion under 18 U.S.C. § 3582(c)(2) in Petitioner's criminal case, Case No. 09-CR-00096-LHK. In that motion, Petitioner seeks to reduce his sentence in accordance with Amendment 782 to the U.S. Sentencing Guidelines. *See* Mot. Reduce. Amendment 782 revised the Drug Quantity Table in section 2D1.1 of the U.S. Sentencing Guidelines and reduced the offense level applicable to many drug trafficking offenses, including those involving cocaine, by two levels. *See United States v. Beasley*, No. 89-CR-00602-THE-1, 2014 WL 6694058, at *2 (N.D. Cal. Nov. 26, 2014). Respondent has not responded to Petitioner's motion, but requests that if the Court denies the Petition, the Court grant Respondent an opportunity to address the motion for modification of sentence separately. Opp'n at 2.

Accordingly, the Court hereby ORDERS Respondent to file an answer to Petitioner's motion for modification of sentence. The answer shall not exceeding ten (10) pages in length, and Respondent shall file the answer within thirty (30) days of the filing of this Order. Respondent shall file the answer in Petitioner's criminal case, Case No. 09-CR-00096-LHK.

### IV.   CONCLUSION

For the reasons stated above, the Court DENIES the Petition with prejudice. No certificate of appealability shall issue, as Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2). With respect to Petitioner's civil case, Case No. 13-CV-00698-LHK, the Clerk of the Court is directed to enter judgment for Respondent and against Petitioner and close the file.

As for the motion for modification of sentence in Case No. 09-CR-00096-LHK, Respondent is hereby ORDERED to file an answer to the motion within thirty (30) days of the filing of this Order.

**IT IS SO ORDERED.**

Dated: August 6, 2015

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

Case Nos. 13-CV-00698-LHK and 09-CR-00096-LHK
ORDER DENYING PETITION FOR HABEAS CORPUS, AND DIRECTING RESPONDENT TO ANSWER